*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0068**

State of Minnesota,
Respondent,

vs.

Kelly Eugene Jenkins,
Appellant.

**Filed August 24, 2015
Affirmed
Hooten, Judge**

Anoka County District Court
File No. 02-CR-13-5685

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Kelsey R. Kelley, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie Willett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this appeal from the district court's revocation of his probation, appellant argues that the district court erred in revoking his probation and executing his sentence upon his

failure to complete inpatient chemical dependency treatment when that requirement was never made a condition of his probation. Because the district court's revocation was based upon appellant's admission that he intentionally violated specific conditions of probation, and his failure to complete chemical dependency treatment was only considered in the determination of whether he was amenable to probation, we affirm.

## FACTS

Appellant Kelly Eugene Jenkins provided alcohol to a 16-year-old girl and then sexually assaulted her. Because the victim was too traumatized from the sexual assault to provide testimony at appellant's anticipated trial, the state offered appellant a stayed prison sentence in exchange for his plea of guilty to one count of first-degree criminal sexual conduct. Appellant accepted the state's offer and pleaded guilty. The district court accepted appellant's plea, and, consistent with the state's offer, placed appellant on probation for 30 years. There is no record at the sentencing hearing that there was any discussion or determination by the district court that appellant was amenable to probation. The district court imposed several conditions of probation, including the requirements that appellant (1) abstain from using alcohol, (2) follow all of his probation officer's instructions, and (3) remain law-abiding.

Just three months later, the state alleged that appellant was regularly consuming alcohol and had refused to comply with his probation officer's instruction to notify the officer any time that he changed his address. Appellant waived his right to contest these violations and admitted to the violations.

Two weeks later, the state alleged that appellant provided alcohol to an underage girl who was diagnosed with fetal alcohol syndrome. The state indicated that with this act, appellant violated the probation condition requiring him to remain law-abiding. His probation officer also indicated that he had received reports that appellant continued to spend "considerable time" at the "Teen Area" in the Minneapolis Public Library. The state also alleged that in the time since appellant admitted to regularly consuming alcohol and refusing to provide his probation officer with changes in his address, appellant had continued to violate these conditions of probation.

At a probation violation hearing, appellant admitted to intentionally providing alcohol to an underage girl. Appellant also told the district court that he was intentionally continuing to consume alcohol and conceded that he was intentionally refusing to inform his probation officer of his changes in residency. Appellant stated that he knew that he had intentionally violated these three conditions of probation with these acts.

The probation officer argued that the district court should revoke appellant's probation because during the "short time" he had been placed on probation, appellant continued to seek out contact with young girls and admitted to providing alcohol to one girl, the very act that appellant engaged in before sexually assaulting the victim in his underlying conviction. The probation officer also indicated that appellant had been "very difficult to supervise" because he refused to maintain any contact with the officer.

Defense counsel did not dispute that appellant intentionally violated three of the conditions of his probation. Counsel asked only that the district court "consider

3

furloughing" appellant to inpatient chemical dependency treatment so that he could address his struggles with chemical dependency.

The district court indicated that it was troubled by appellant's admissions, and it stated that the violations could support revoking appellant's probation. But, in accepting defense counsel's request that appellant be furloughed for inpatient chemical dependency treatment, the district court stated that it would withhold final disposition for appellant's admitted violations of probation for 30 days.

When appellant returned for the disposition hearing 30 days later, the district court was informed that appellant had been involuntarily discharged from treatment. The district court then revoked appellant's probation after rejecting his arguments that his prior violations were the result of his lack of access to chemical dependency treatment and that he should be afforded another attempt to seek treatment. This appeal followed.

**D E C I S I O N**

The district court has discretion to revoke probation if it finds that (1) the probationer violated a condition of probation, (2) the violation was intentional or inexcusable, and (3) the need for confinement outweighs the policies favoring probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Under the first *Austin* factor, the condition of probation "must have been . . . actually imposed by the [district] court" for it to form the basis of the court's decision to revoke probation. *State v. Ornelas*, 675 N.W.2d 74, 80 (Minn. 2004). The state bears the burden of proving a probation violation by clear and convincing evidence. *Id.* at 79. In assessing the third *Austin* factor, the district court should consider whether:

4

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005) (quotation omitted).

We affirm because the district court found that all three *Austin* factors indicated that probation should be revoked, and appellant does not directly challenge these findings. First, the district court found that the first two *Austin* factors were satisfied based on testimony at the revocation hearing. The district court heard the probation officer's allegations of the violations and appellant then admitted to the district court that he intentionally violated the three conditions of probation. The district court found that the probation officer's allegations and appellant's admissions were clear and convincing evidence. Appellant does not dispute any of these findings on appeal. We therefore affirm the district court's findings that clear and convincing evidence demonstrates that the first two *Austin* factors were satisfied at the first revocation hearing. *See* 295 N.W.2d at 250; *see also Ornelas*, 675 N.W.2d at 80.

The district court found that the third *Austin* factor was satisfied at the second disposition hearing. The district court first heard testimony related to the third *Austin* factor at the first revocation hearing when the probation officer testified that appellant could not successfully obtain correctional treatment without confinement. Appellant's counsel did not dispute the probation officer's allegations or district court's findings under the first two *Austin* factors. But, he did challenge the probation officer's argument

5

regarding the third *Austin* factor and argued that confinement was not necessary because counsel had arranged for appellant to obtain inpatient chemical dependency treatment, which counsel believed was the source of appellant's violations. After hearing this testimony, the district court stated that, "I don't think that there's any way you are going to make it through probation." But, the district court declined to make any explicit findings on the third *Austin* factor at this time, and it agreed to defer its decision on the final disposition of revocation for 30 days to allow appellant to obtain chemical dependency treatment to demonstrate that he was amenable to probation.

When the parties returned to the district court for disposition 30 days later, after appellant had failed to make progress in treatment, the district court made its findings under the third *Austin* factor and revoked appellant's probation. The district court stated that providing alcohol to a minor girl was "extremely, extremely serious" and "the need for confinement outweighs the theories that favor supervising him on probation." The district court's rationale was based on two findings: that appellant could not obtain treatment without confinement, and "to not execute the sentence at this point would unduly depreciate the seriousness" of the probation violations. On appeal, appellant does not directly dispute the district court's findings, and we hold that the district court's findings support revocation under the third *Austin* factor. *See Modtland*, 695 N.W.2d at 607 (noting that revocation is supported if the district court finds that failing to revoke probation would unduly depreciate the seriousness of the violation or that the offender's need for correctional treatment can most effectively be provided while appellant is confined).

6

Appellant's only argument in support of his challenge was that the district court "very clearly" based its decision to revoke probation on his "discharge from treatment," despite the fact that successful completion of treatment was not a condition of his probation. The record does not support his characterization of the district court's findings. The record unambiguously reveals that the district court's findings under the first *Austin* factor were based entirely on the three violations to which appellant admitted at the revocation hearing. Appellant's unsuccessful treatment could not form the basis for the district court's findings under the first *Austin* factor because the district court made those findings *before* appellant unsuccessfully sought treatment.

To the extent that appellant's discharge from treatment affected the district court's decision, it was under the third *Austin* factor. By observing that appellant failed to make any progress in treatment, the district court repeated its belief that nothing in the record indicated that appellant could successfully comply with his probation requirements for the next 30 years. Appellant does not contend that the district court could not use this fact in its analysis under the third *Austin* factor, and our supreme court has explicitly stated that a probationer's need for correctional treatment is relevant under the third *Austin* factor. *See id*. And, at the first revocation hearing, appellant explicitly asked the court to delay its disposition to allow appellant to seek treatment and hopefully demonstrate his amenability to probation. That is, appellant specifically asked the district court to find that his experience with treatment was relevant to the third *Austin* factor.

The record reveals that no one has ever suggested that appellant is amenable to probation, and the district court's decision to stay the original sentence had nothing to do

7

with appellant's amenability to probation.  Because appellant admitted to intentionally violating three conditions of his probation and his inability to complete chemical dependency treatment supported the district court's finding that the need for confinement outweighed the policies favoring probation, we affirm the district court's well-reasoned decision to revoke appellant's probation and execute his sentence.

**Affirmed.**